```
1                 UNITED STATES COURT OF FEDERAL CLAIMS

2

3

4    CGI FEDERAL, INC.,                        )

5            Plaintiff,                        ) Case No.

6              vs.                             ) 14-355C

7    THE UNITED STATES OF AMERICA,             )

8            Defendant.                        )

9

10

11

12                         Suite 612

13          Howard T. Markey National Courts Building

14               717 Madison Place, N.W.

15                  Washington, D.C.

16                Friday, May 1, 2015

17                   11:00 a.m.

18            Telephonic Status Conference

19

20

21      BEFORE:   THE HONORABLE MARY ELLEN COSTER WILLIAMS

22

23

24

25   Elizabeth M. Farrell, Digital Transcriber
```

CGI Federal, Inc. v. USA                                    5/1/2015

```
 1    APPEARANCES:

 2    ON BEHALF OF THE PLAINTIFF:

 3              SCOTT M. McCALEB, ESQ.

 4              GARY S. WARD, ESQ.

 5              DANIEL P. GRAHAM, ESQ.

 6              Wiley Rein, LLP (DC)

 7              1776 K Street, NW

 8              Washington, DC  20006

 9              (202) 719-3193

10              smccaleb@wileyrein.com

11

12    ON BEHALF OF THE DEFENDANT:

13              WILLIAM P. RAYEL, ESQ.

14              U.S. Department of Justice

15              Commercial Litigation Branch, Civil Division

16              Post Office Box 480

17              Ben Franklin Station

18              Washington, DC  20044

19              (202) 616-0302

20               william.rayel@usdoj.gov

21

22    ALSO PRESENT:

23              Jeffri Pierre, DHHS

24

25
```

CGI Federal, Inc. v. USA                                    5/1/2015

```
 1                    P R O C E E D I N G S
 2                 -    -    -    -    -
 3          (Proceedings called to order, 11:09 a.m.)
 4          THE COURT:  -- Inc. vs. United States, Number 14-
 5   355C.  I'm Judge Williams.  Let me ask counsel to please
 6   identify themselves for the record.
 7          MR. MCCALEB:  For Plaintiff, CGI, it's Scott
 8   McCaleb from Wiley Rein, and with me is Dan Graham and Gary
 9   Ward, both from Wiley Rein.
10          THE COURT:  Good morning.
11          MR. MCCALEB:  Good morning, Your Honor.
12          THE COURT:  And for the Government?
13          MR. RAYEL:  This is William Rayel with the
14   Department of Justice, and on another line is Jeffri Pierre
15   from Health and Human Services.
16          THE COURT:  Thank you and welcome.
17          MS. PIERRE:  Good morning.
18          THE COURT:  Good morning.  So, what I'd like to try
19   to figure out is what do we agree on here.  Mr. McCaleb, what
20   -- at least what terms do you think of this injunction can
21   you both live with and then we'll talk about what you
22   disagree on.
23          MR. MCCALEB:  I think that we can live with the
24   enjoinment or the injunction of placing orders against the
25   existing RFQs and I think, from there, we depart on the until
```

For The Record, Inc.
(301) 870-8025 - www.ftrinc.net - (800) 921-5555

1    language.  Until what?  So, we agree that the Defendant can

2    be enjoined from placing orders or awarding contracts under

3    the existing RFQs, and then I think after that, that's where

4    we depart, what next.

5              THE COURT:  And the Plaintiff, just to recap?

6              MR. MCCALEB:  Yeah, what we would say is that the

7    Court should enjoin the Government from proceeding with award

8    under the existing RFQs and -- so, that's just -- that's one

9    injunction.  And then the additional order would be that the

10   Government have to provide all prospective offerors,

11   including CGI, a reasonable opportunity to submit quotes in

12   response to any new or amended RFQs that the Defendant wants

13   to proceed with.

14             We had suggested 21 calendar days as a reasonable

15   opportunity to respond to any new or amended solicitation.

16   The basis for that, Your Honor, was that that was the amount

17   of time that CMS gave in their initial RFQ.  When they

18   initially released it, they said you have 21 days to respond.

19   So, we were just using the number of days that CMS itself had

20   used.

21             THE COURT:  Okay.  That's not necessarily something

22   that Courts typically get into, however, right?

23             MR. MCCALEB:  Yes, Your Honor.  I guess it's --

24   we're in one of these precarious situations where we --

25   we're of the view that every time we give an inch, you know,

CGI Federal, Inc. v. USA                                    5/1/2015

1    the Government takes a yard.  And, so, the more clarity that

2    could be given here, we think the better.  I recognize that

3    it is probably not the norm that you would identify a number

4    of days.

5             THE COURT:  Okay.  Mr. Rayel, do you have any

6    problem if we get rid of the number of days to having the

7    injunction have the two parts that Mr. McCaleb just

8    articulated?

9             MR. RAYEL:  Yes, Your Honor, absolutely we do, as

10   set forth in our reply to their response to our status report

11   that we filed yesterday.  What the injunction should do here

12   is it should basically fix the problem that the Federal

13   Circuit addressed, which is that the agency did not comply

14   with FAR Part 12.

15            So, the injunction should enjoin the award of the

16   RFQs at issue until CMS complies with Part 12 of the Federal

17   Acquisition Regulation and all the various possibilities that

18   that could entail.  It could possibly entail the agency, you

19   know, obtaining a waiver and not amending the payment terms.

20   You know, perhaps they'll need to do an addendum pursuant to

21   12.302(d).  I don't know.  But that's part of FAR Part 12.  I

22   mean, ultimately, the agency shall retain the discretion to

23   do what it can under the law.  And, so, we don't believe that

24   an injunction going further than what we proposed in our

25   reply brief would go beyond the Federal Circuit's decision

1     and interfere with the agency's lawful discretion.

2              THE COURT:  Okay.  So, I want to just pound on what

3     we've got on the table.  So, number one, enjoin Defendant

4     from placing orders against existing RFQs absent a waiver.

5     Does that solve it?

6              MR. RAYEL:  Oh, no, until CMS complies with Part 12

7     of the Federal Acquisition Regulation with regard to the

8     payment terms.  CMS is required to comply with Part 12.  So,

9     that's just --

10             THE COURT:  Well, of course they are, but that's --

11    I'm just talking about the injunction.

12             MR. RAYEL:  Right, Your Honor.  And what -- what

13    Plaintiff wants to do is limit -- limit the various things

14    that CMS can do.  And what we're saying is that CMS should

15    retain its lawful discretion to do -- to do whatever it wants

16    within the bounds of the law.  The Court doesn't need to make

17    any decision about what the outer limits of those bounds are

18    at this time.  It could simply issue an injunction fixing the

19    problem the Federal Circuit found, which is you need to

20    comply with FAR Part 12.  That is the injunction we propose.

21             MR. MCCALEB:  Your Honor, we'd love to respond to

22    that.

23             THE COURT:  Well, you may, just a minute.  I want

24    to look at his papers to see exactly what he's talking about.

25    Okay, ordered that the Defendant, da, da, da -- okay, so, Mr.

CGI Federal, Inc. v. USA                                    5/1/2015

1    McCaleb, you don't -- that doesn't do it for you?

2            MR. MCCALEB:  It absolutely does not, especially

3    with the explanation that the Government has given as to what

4    they want to do and are proposing to potentially do.  What

5    they're basically saying is that there should be no

6    preclusive effect to what has happened in the last year and a

7    half of litigation and hundreds of thousands of dollars that

8    my client has spent trying to vindicate its rights.  Even

9    where we're talking about the exact same procurement by the

10   exact same agency for the exact same services under the exact

11   same solicitations, which they want to proceed under, in

12   analyzing the exact same quotes that they've been evaluating

13   for the last year.  That's not what the law permits.

14           They've said in their papers what they want to be

15   able to do, they want to go back and -- they are in the midst

16   of doing market research and the market research they say is

17   for two purposes.  And they said one is to go back and make a

18   new determination based on market research that the terms are

19   consistent with customary commercial practice.  Well, that's

20   not true.  That's what we -- that is what we've thought for

21   more than a year to say that they -- that did not exist.

22           The terms are not consistent with customary

23   commercial practice.  This Court found that, the Federal

24   Circuit agreed and CMS does not now get a do-over to go try

25   and say, oh, these terms are, in fact, consistent with

CGI Federal, Inc. v. USA                                    5/1/2015

1    customary commercial practice.  We had to put in -- the Court

2    told us to and we did and we did the same thing at GAO.  We

3    put in two declarations establishing that they're

4    inconsistent with customary commercial practice and now

5    they're trying to say, oh, well, we're going to go back and

6    check again.

7          Well, Note 5 of the Federal Circuit's decision

8    expressly says DOJ waives their right to contest it and says

9    the Government, in response to oral argument questions

10   indicated that the Court of Federal Claims, you, Your Honor,

11   was without authority to find that the revised payment terms

12   were inconsistent with customary commercial practice.  We

13   deem this issue waived by the Government.

14         THE COURT:  Mm-hmm.

15         MR. MCCALEB:  And, indeed, if we need any further

16   indication of the Federal Circuit's view on it, you can look

17   at the transcript where Judge Moore, at page 35 of the

18   transcript, says I don't understand why that ship hasn't

19   sailed.  You had a chance throughout this litigation to

20   clearly put this in issue.  You chose not to dispute it.  I

21   don't understand what set of circumstances on remand allows

22   you to reopen that issue, take it back to the agency and

23   allow them to potentially proffer an argument about what --

24   whether it is or isn't customary.

25         Judge Taranto said the same thing effectively.  He

CGI Federal, Inc. v. USA                                    5/1/2015

1     said these terms have definitively and finally and

2     preclusively been determined to be contrary to commercial --

3     customary commercial practice.  The fact that we're having to

4     spend additional money dealing with this issue is

5     particularly disappointed.  The Justice Department could have

6     sought to overturn the Federal Circuit's ruling on this and

7     they didn't and my client should not be forced to continue to

8     have to respond to the Government's -- you know, their

9     arguments here.

10            The second thing they --

11            THE COURT:  Okay, before we go to the second thing.

12            MR. MCCALEB:  Yes, Your Honor.

13            THE COURT:  So, Mr. McCaleb, does this Court, the

14     trial court have the authority to order the Government to

15     stop doing the market research to make a new determination

16     that the terms are consistent?

17            MR. MCCALEB:  We have -- we don't have any problem

18     with them doing market research if they want to do it, but

19     they can't -- they can't do it for the purpose of trying to

20     establish that the terms are consistent with customary

21     commercial practice.

22            THE COURT:  Okay.

23            MR. RAYEL:  Your Honor, this is Mr. Rayel.  The FAR

24     says that the agency has to do market research to determine

25     what the customary commercial practices are.  The agency is

CGI Federal, Inc. v. USA                                      5/1/2015

1    following the FAR.  I mean, the idea -- the trial court --

2    the Court made a determination that the terms were

3    inconsistent with customary commercial practice for purposes

4    of this litigation.  The agency had not analyzed that issue.

5    It had not done the market research.  And our position, of

6    course, was that it wasn't required to.  The Federal Circuit

7    disagreed with that position.  The Federal Circuit found that

8    we are required to comply with Part 12.  So, now, the agency

9    is complying with -- trying to comply with Part 12 in doing

10   that market research.

11         It is possible -- possible, I'm not saying this

12   will happen, it's possible that the market research in full

13   might show that the agency's payment terms are consistent

14   with customary commercial practice.

15         THE COURT:  But wait a minute, Mr. Rayel.  The

16   Federal Circuit held that they're not and that you waived the

17   opportunity to challenge that.

18         MR. RAYEL:  The Federal Circuit held that we waived

19   the opportunity to challenge that they were inconsistent with

20   customary commercial practice.

21         THE COURT:  Correct.  So, what the heck are you

22   doing commercial --

23         MR. RAYEL:  This is (inaudible) litigation.  This

24   would be -- if -- this is a big if, hypothetical.  But if the

25   -- if CMS were to do the market research that it's doing and

1    determine -- and the market research led to the conclusion

2    that their payment terms are, in fact, consistent with

3    customary commercial practice, that would be an entirely new

4    lawsuit, a separate issue.  It would not be the identical

5    issue that was decided here in this Court.  The question

6    would be, did the agency make a rational determination based

7    on adequate market research that the terms are consistent

8    with customary commercial practice?  That issue has not been

9    decided by any court.  Of course, it couldn't have been

10   because the agency has made no such determination.

11            THE COURT:  Well, I think that that would be

12   contrary to the Federal Circuit's holding.

13            MR. RAYEL:  And that's an issue -- and I'm sure CGI

14   will argue that in the case if the agency, in fact, made such

15   a determination.  But that's ultimately -- that's ultimately

16   an issue for another case.  We've laid out in Number 5 why we

17   don't think collateral estoppel would apply for several

18   reasons, including the fact that the issue hasn't been

19   actually litigated because we never disputed that the terms

20   were not consistent with customary commercial practice.

21            THE COURT:  Well, if you concede the point, it's

22   been litigated.

23            MR. RAYEL:  No, no, it hasn't, Your Honor.  That's

24   not what the law says.  And it's -- we don't need to decide

25   this issue now.  This can be decided in another case if the

CGI Federal, Inc. v. USA                                    5/1/2015

 1    agency makes that determination.

 2            THE COURT:  Well, you could have litigated it.

 3            MR. RAYEL:  We -- what we could have argued is that

 4    the -- is that CGI was not prejudiced by the fact that we

 5    failed to comply with Part 12 because the terms are, in fact,

 6    consistent with customary commercial practice.  We didn't

 7    have market research to support that because the agency

 8    didn't do the market research because it wasn't required to

 9    follow Part -- it didn't believe it was required to follow

10    Part 12, a view that both this Court and the GAO agreed with.

11    The Federal Circuit had disagreed so now the agency needs to

12    go back and follow Part 12.

13            Part of Part 12 is being able to make the

14    determination the terms are -- based on market research, the

15    terms are -- based on market research, the terms are

16    consistent with customary commercial practice.  If the agency

17    made that determination --

18            THE COURT:  Right.

19            MR. RAYEL:  -- there would be a rationale basis --

20    there would -- CGI could challenge the rationality of that

21    determination.  That issue has not been before any court.

22            MR. MCCALEB:  Your Honor, with all due respect, the

23    issue of whether these terms have been before a court, that

24    is exactly what we litigated.  Are these terms, which are

25    mandating a belt and suspenders approach and requiring RACs

CGI Federal, Inc. v. USA                                    5/1/2015

1    to wait three to ten times longer to get paid, we -- that's

2    exactly what we litigated and -- and the Federal Circuit's

3    Shell Petroleum case says, look, when one party introduces

4    evidence on a dispositive issue of fact and an adverse party

5    with an opportunity and motive to contest the presentation

6    chooses not to, the ensuing finding is entitled to the same

7    respect as one litigated to the hilt.  This is -- this has

8    been decided.

9         And for the Government to be here now saying, oh,

10   we're going to -- a year and a half later, hundreds of

11   thousands dollars later and suggests that, oh, we're going to

12   go check now and see whether these terms are consistent with

13   customary practice, that's nonsense.  That's what we've been

14   litigating for more than a year.

15        MR. RAYEL:  The Government has to do that, Your

16   Honor, it's part of the FAR.  That's -- that's part of the

17   determination that's to be made.  What is the customary

18   commercial practice?  The agency is required to do market

19   research to determine that.  So, to say the agency can't do

20   that now is just --

21        MR. MCCALEB:  That's not --

22        MR. RAYEL:  -- it just doesn't make any sense.

23        MR. MCCALEB:  That is not, Your Honor, what CGI is

24   saying.  We're not saying they can't do market research.

25   What we said is you can't go do market research for the

CGI Federal, Inc. v. USA                                    5/1/2015

1    purpose of trying to establish that the terms are consistent

2    with customary practice --

3              MR. RAYEL:  And, Your Honor, that is not the --

4              THE COURT:  Let him finish, please, Mr. Rayel.

5              MR. RAYEL:  Okay, I thought he was done, I'm sorry.

6              MR. MCCALEB:  That has been fully litigated,

7    adjudicated and preclusively determined.

8              THE COURT:  Okay.  So, let's go -- I want you to

9    file the transcript of the oral argument at the Circuit,

10   please, Mr. McCaleb, since you're relying on it.

11             MR. MCCALEB:  Yes, Your Honor.

12             THE COURT:  What in my record suggests that this

13   case was adjudicated?

14             MR. MCCALEB:  Your Honor, you --

15             THE COURT:  I'm just asking you to make a record,

16   Mr. McCaleb.  So, tell me on the record what in my record

17   and/or in my decision suggests that this issue has been

18   determined by me.  I see -- you're going to tell me what the

19   Circuit said and I see their Footnote 5.  But what supports

20   that?  Is there a statement by the Government on the record

21   about why they're not -- that they're not contesting this?

22             MR. MCCALEB:  Yes.  I think, Your Honor, that the

23   section of the -- of this Court's opinion that begins on -- I

24   believe it's page 9 of the Court's decision that the modified

25   payment terms deviate from standard commercial practice, and

CGI Federal, Inc. v. USA                                5/1/2015

1    that's based on the -- that's based on the evidence that we

2    put in, the Roth declaration, that this Court made the

3    determination that the modified payment terms deviate from

4    standard commercial practice.

5            THE COURT:  Mm-hmm, okay.  Okay.  And the

6    Government's now going to try to undercut that finding by

7    saying that, well, we did admit that.  You're not denying

8    that, right, Mr. Rayel?

9            MR. RAYEL:  No, Your Honor.  And I --

10           THE COURT:  You admitted it.  You admitted it.

11   And, therefore, because you didn't think Part 12 applied, you

12   didn't do the market research.  But now that Part 12 applies,

13   you think that you cannot admit that?

14           MR. RAYEL:  No, we're not -- we're not withdrawing

15   any -- first of all, we never admitted that the terms were

16   inconsistent with customary commercial practice.  What the

17   Federal Circuit found correctly is that we did not dispute

18   that they were inconsistent with customary commercial

19   practice for -- and then in the footnote, they -- you know,

20   we noted in a footnote in our brief that we didn't -- we

21   didn't think the Court should make a de novo determination.

22           The terms are, in fact, inconsistent with customary

23   commercial practice and the Court -- the Federal Circuit

24   found that this issue was waived.  Our waiving an issue of

25   whether it was appropriate for the trial court -- for this

1     Court to make a de novo determination about consistency of

2     these terms with customary commercial practice.  The Federal

3     Circuit found that waived.  We're not disputing the Federal

4     Circuit's decision on that issue.

5            We have a whole -- a new potential hypothetical

6     issue that we're talking about here and that's if the agency

7     does --

8            THE COURT:  Wait a minute, wait a minute, wait a

9     minute.  Let me -- I want to focus on that still.

10           MR. RAYEL:  Yes, Your Honor.

11           THE COURT:  The Government, in Footnote 5, in

12    response to oral argument questions, indicated that the Court

13    of Federal Claims was without authority -- without authority

14    to find that the revised payment terms were inconsistent with

15    customary commercial practice.  What the heck does that mean?

16    We deem this issue waived.  So, my authority was called into

17    question?

18           MR. RAYEL:  What we stated -- what we stated in a

19    footnote in our brief, Your Honor, was that -- I mean, as we

20    understood what the Court did in its opinion, it basically

21    made a de novo determination that these terms were -- based

22    upon evidence presented by CGI, that these terms are

23    inconsistent with customary commercial practice.

24           THE COURT:  Ah, so, it was the Court of Federal

25    Claim made a de novo finding?

CGI Federal, Inc. v. USA

1           MR. RAYEL:  Right.  And we --

2           THE COURT:  And you said that was wrong.

3           MR. RAYEL:  -- (inaudible) our position that it was

4    inappropriate for the Court to have made that finding that

5    that was not the issue in this case.  In fact, by the Court

6    finding that Part 12 didn't apply, there was no need to make

7    that finding.

8           THE COURT:  Okay.

9           MR. RAYEL:  In any event, you know, the Federal

10   Circuit asked some questions about this at oral argument and

11   we -- you know, and we -- we discussed it and ultimately they

12   deemed the issue to be waived, which --

13          THE COURT:  Right, right, right.

14          MR. RAYEL:  -- we're not disagreeing with frankly.

15          THE COURT:  Well, you're not.  Okay, so, the issue

16   is this:  This Court, in your view, erroneously made a

17   determination that the revised payment terms were

18   inconsistent with customary commercial practice.  Erroneously

19   made that de novo finding.  That was your position, right?

20   That I didn't have the authority to do that.

21          But the Federal Circuit said, by saying that you

22   waived it, oh, no, no, no, that stands, right?  Isn't what

23   that footnote means?  That finding of mine, that de novo

24   finding, erroneous or note, stands because you didn't

25   challenge it.

CGI Federal, Inc. v. USA                                      5/1/2015

1          MR. RAYEL:  Yes, that finding stands for purposes
2    of this litigation.  Whether or not it has conclusive effect
3    in another litigation is an entirely different issue.
4          THE COURT:  Well, wait, wait, wait.  But it has
5    effect in this litigation and, quite frankly, Mr. Rayel, all
6    I care about right now is how to frame the terms of the
7    injunction.
8          MR. RAYEL:  Absolutely, Your Honor, and that's why
9    -- we're not asking you to -- we're not asking you to decide
10   collateral estoppel issues for future litigation or whether
11   or not a waiver would be appropriate or not.  You know, CGI
12   has taken the position that waiver can't be appropriate.  We
13   don't -- maybe it is, maybe it isn't.  That's not --
14         THE COURT:  Okay.
15         MR. RAYEL:  That's not an issue that you need to
16   decide.  What we're saying is --
17         THE COURT:  Right.
18         MR. RAYEL:  -- we can fix the error that the
19   Federal Circuit found, which is just to say the agency can't
20   award pursuant to these RFQs until it complies with FAR Part
21   12, whatever that happens to mean.
22         THE COURT:  Well, but if my decision that the
23   Federal Circuit acknowledged is alive and well, said, okay,
24   the current revised payment terms are inconsistent with
25   customary commercial practice, don't you have to do something

1    about that in this case in order to comply with the Federal

2    Circuit's mandate and don't I?

3           MR. RAYEL:  No, Your Honor, the Court -- what

4    the -- the Court is within its authority to issue an

5    injunction that requires us to comply with Part 12.  The

6    agency should then go and comply with Part 12, including

7    doing the market research determining what the customary

8    commercial practices are, and if it wants to include terms

9    that are inconsistent with customary commercial practice,

10   which it has not decided to do, it should obtain a waiver.

11          That -- I mean, but no, we don't need to over -- we

12   don't need to overturn the Court's finding in this case.  I

13   mean, the Federal Circuit thought it was inconsistent, this

14   Court did, and based on the evidence in the record, we're not

15   challenging that.  But now the agency is tasked with going

16   out and doing its own market research to make the

17   determinations of what is a customary commercial practice.

18   If the agency, based on that market -- I mean, if the market

19   -- it doesn't make any sense.  If the market research leads

20   to the fact that their current payment terms are consistent

21   with customary commercial practice, the agency is supposed to

22   ignore that?  I mean, that doesn't make any sense.

23          The agency should be allowed to do the market

24   research that it's required to do under the FAR, make the

25   determinations of what's a customary commercial practice that

CGI Federal, Inc. v. USA                                5/1/2015

1   it's required to do under the FAR based upon that market

2   research and wherever that may -- wherever that leads, it

3   leads.   The agency's not trying to justify its payment terms

4   here.   It's trying to follow the FAR.

5         THE COURT:   Well, you can certainly do that next

6   time, but I'm not so sure that you can do that now given the

7   posture of this litigation.   But maybe we don't need to

8   really get into the thorny thicket of what's going to happen

9   later.

10         MR. RAYEL:   I think that's right, Your Honor.

11         THE COURT:   What would be wrong, Mr. Rayel, if I

12   were to say, based on the Federal Circuit's decision, that

13   your agency is enjoined from placing orders against the

14   existing RFQs -- and maybe you can give me a qualifier there,

15   either absent a waiver or whatever, something else.   Maybe

16   that's the case.

17         MR. RAYEL:   I think that's right, Your Honor, and I

18   think the appropriate qualifier is until CMS complies with

19   Part 12 of the Federal Acquisition Regulation with respect to

20   the payment terms, because that's the error that was found.

21   They didn't -- CMS did not comply with Part 12.   CMS needs to

22   comply with Part 12 with respect to these payment terms.

23         THE COURT:   But that just -- that just extends this

24   procurement out into eternity possibly or for a long time.

25         MR. RAYEL:   How?   I'm sorry, Your Honor, I'm not --

CGI Federal, Inc. v. USA                                    5/1/2015

1      I don't --
2              THE COURT:  Well, you're going to do market
3      research, you're going to come back.  It may -- the market
4      research may show it's consistent, it may show it's
5      inconsistent.  But --
6              MR. RAYEL:  That's right, Your Honor.  And that's
7      what the FAR -- that's what the FAR requires.
8              THE COURT:  Well, it may, it may.  But the dilemma
9      that we find ourselves in now is how do we follow the
10     Circuit's decision in this case.  And, certainly, the
11     injunction would say you can't place the orders under the
12     existing RFQs just as they are, unless you do something
13     without waiver.
14             Now, but I'm not sure it's appropriate, given the
15     finding that I made and the finding that the Circuit didn't
16     touch about these currently being inconsistent with
17     commercial practice, that you go get to do a redo on that
18     now.
19             MR. MCCALEB:  Your Honor, one point on that, if I
20     might, it's more than the Circuit didn't touch it.  If you
21     look at the sentence of the Circuit's opinion that precedes
22     the footnote itself, it says we affirm these undisputed fact
23     findings.
24             THE COURT:  Okay, thank you.  Okay.
25             MR. MCCALEB:  You're welcome.

CGI Federal, Inc. v. USA                                    5/1/2015

 1          THE COURT:  You're right.  They not only touched it
 2  -- they not only said you waived it, but they affirmed it.
 3          MR. RAYEL:  But, Your Honor, I think we --
 4          THE COURT:  So, aren't we all, even you, Mr. Rayel,
 5  stuck with that for going forward now?
 6          MR. RAYEL:  We're not stuck with that for
 7  purposes --
 8          THE COURT:  And I just use that because I think
 9  that's what you're trying to fight.
10          MR. RAYEL:  Yeah, I mean, I don't want to keep
11  going, but, I mean, we said in -- we explained in our reply
12  brief the various reasons why collateral estoppel would not
13  apply in a protest if the agency made a determination,
14  hypothetically, that these terms are consistent with
15  customary commercial practice based on market research, where
16  we set forth three reasons why collateral estoppel did not
17  apply.
18          THE COURT:  Well, this isn't --
19          MR. RAYEL:  And the Court doesn't need to decide
20  that issue.  It can simply require --
21          THE COURT:  No, but I do need to decide --
22          MR. RAYEL:  I'm sorry, Your Honor, go ahead.
23          THE COURT:  Mr. Rayel, I do need to decide what the
24  law of this case is.
25          MR. MCCALEB:  Right.

For The Record, Inc.
(301) 870-8025 - www.ftrinc.net - (800) 921-5555

CGI Federal, Inc. v. USA                                          5/1/2015

1           THE COURT:  And forget collateral estoppel.  I need
2    to figure out what the law of this case is and my injunction
3    needs to be predicated on that.  And that's why I'm having
4    trouble with you trying to deviate.  Honestly, I think that
5    you're what -- you're going out and doing this market
6    research would be in an effort to undo a finding that was
7    made conclusively by this Court and affirmed by the Federal
8    Circuit.

9           MR. RAYEL:  The agency is not trying to undo any
10   findings.  The agency is trying to comply with the law in
11   doing this market research.

12          THE COURT:  Okay.

13          MR. RAYEL:  It's not -- I mean, the injunction
14   shouldn't -- the injunction should not interfere with the
15   lawful discretion of the agency.  Now, we can have all sorts
16   of disputes about whether or not the agency is precluded
17   from, you know, making a finding under the FAR that it's
18   required to about, you know, what is a customary commercial
19   practice.  But we don't need to.  The simple solution here is
20   for the Court to enjoin these RFQs until CMS complies with
21   Part 12 of the Federal Acquisition Regulation with respect to
22   the payment terms.

23          THE COURT:  No, but it's the until --

24          MR. RAYEL:  Because that encompasses all aspects of
25   -- that encompasses the problem that the Federal Circuit

CGI Federal, Inc. v. USA                                              5/1/2015

```
 1    found.  It actually goes a little beyond the problem since

 2    they were limited -- they were more limited in, you know, the

 3    regulations they've now violated.  But, I mean, ultimately

 4    this issue -- this case was about whether Part 12 applies to

 5    these -- applies to this procurement.  The Federal Circuit

 6    found that it was; the agency now needs to comply with Part

 7    12 with respect to these payment terms.  That's all the Court

 8    should order.

 9               MR. MCCALEB:  Your Honor, can I give one brief

10    response?

11               THE COURT:  Yes.

12               MR. MCCALEB:  I'm sorry, Your Honor.  The --

13               THE COURT:  No, I mean, this is helpful.  I don't

14    know what I'm going to do here, keep talking.

15               MR. MCCALEB:  The Government here is saying --

16    keeps citing that the Court shouldn't interfere with its

17    lawful discretion.  It has -- the agency and the Government

18    have no lawful discretion at all to now contest the factual

19    finding that you made and that the Federal Circuit affirmed.

20    And that's exactly what they're trying to do, which is why we

21    can't agree to the language "until the CMS complies with FAR

22    Part 12" because they've told us what they think that means.

23    They've told us that what they think that that means and what

24    it permits them to do is to go forward and to go ahead and

25    make a new finding that is precluded by law of the case, a
```

CGI Federal, Inc. v. USA                                    5/1/2015

1    new finding that these terms actually are, after all,

2    consistent with customary consistent practice.  They have no

3    lawful discretion to make that finding.  The --

4              THE COURT:  Well, let's talk about this then, Mr.

5    McCaleb.  The word "until" maybe is posing a problem here

6    because that's -- that's very broad.  Until it complies with

7    FAR Part 12 in a manner consistent with the Federal Circuit's

8    opinion would mean that it had to acknowledge that FAR Part

9    12, their adjudication of that stands for these -- the

10   purposes of this current solicitation.  Now, they can do

11   whatever they want in future solicitations and do all the

12   market research in the world, but because they waived the

13   issue here and the Circuit affirmed that what happened was

14   inconsistent with FAR Part 12, I'm having a very hard time

15   just philosophically understanding why it would be

16   appropriate to let the agency revisit their compliance with

17   Part 12 nunc pro tunc retroactively.

18             MR. MCCALEB:  That is the exact concern that we had

19   and why we would not -- when the Government introduced this

20   language, why we would not and could not agree to it.  And,

21   so, what we tried to do was make it really simple and say,

22   look, Government, the Government's enjoined from proceeding

23   with an award of the contract under these RFQs, period.

24             And, second, that to the extent that they issue a

25   new or amended RFQ, that they'll give offerors a reasonable

CGI Federal, Inc. v. USA                                    5/1/2015

1    opportunity to respond.  And that response may take the form

2    of submitting a bid, it may take the form of doing nothing

3    and it may take the form of responding via protest, which

4    would ultimately lead to, you know, the second issue that the

5    FAR Part 12 language gave us, you know, heartburn over and

6    that is the Government's now professed desire to potentially

7    issue a waiver after -- that they  -- under their theory of

8    the case, they could have done at any time over the last 15

9    months and, yet, they haven't and they didn't.

10           And, now, after going through all of this

11   litigation and all of the resources that it has cost, you

12   know, now they want to craft an argument that they can waive

13   the use of the terms which is vindictive and, frankly, under

14   the facts of this case, we think is an exemplar of arbitrary

15   and capricious conduct, especially when you consider the

16   professed need that this Court found very troubling, you

17   know, the so-called belt and suspenders approach that

18   increases prices and reduces competition.  We think the far

19   better solution here is just to go ahead and enjoin any award

20   under these RFQs and for any new procurement requires CMS to

21   issue new RFQs or amended RFQs and share the results of the

22   corrective action with all of the RACs and give them an

23   opportunity to decide how to respond.  That's it.

24           It's really -- I don't think it's that simple -- I

25   mean, I think it's pretty simple, especially when you

1    consider under CACI, the RFQs, as written, we believe are a

2    nullity.

3          THE COURT:  Because they don't comply with

4    commercial practice.

5          MR. MCCALEB:  And because they -- and as a result,

6    because they don't comply with the law, you know.  Now, what

7    the Government has said is, well, we shouldn't have to

8    necessarily issue a new, you know, solicitation because you

9    only have to do that where -- and they were analogizing the

10   FAR 15.206, which requires cancellation where -- and a new

11   solicitation where the change is so substantial as to exceed

12   what a prospective offeror reasonably could have anticipated.

13         Well, what change could be more substantial than

14   one that purportedly makes an illegal solicitation legal?

15   They call that a ministerial amendment.  Frankly, with all

16   due response, it's hardly an act that purports to convert an

17   illegal solicitation to a legal one can hardly be deemed and

18   called a ministerial amendment.

19         MR. RAYEL:  Your Honor, what we meant by that was

20   if the agency kept the same payment terms, it wouldn't

21   substantially change any proposals.  I mean, it would be the

22   exact same terms, perhaps adding it to a, quote, "addendum"

23   required by 12.302(d).  I'm not sure if it qualifies right

24   now under that or not.

25         But, you know, I think the one thing we want to

CGI Federal, Inc. v. USA                                    5/1/2015

1    point out from our reply brief is that it's not like this

2    issue has never been litigated before.  You know, the GAO --

3    and admittedly that's a different forum that issues

4    recommendations and not injunctions -- but here's what the

5    GAO recommended in the Smelkinson case.  We recommended the

6    agency amend the RFP to remove the challenge disclosure

7    provisions and then request new proposals.

8             In the alternative, if the agency continues to

9    believe that the provisions are needed, the agency should

10   either confirm through appropriate market research that the

11   provisions are consistent with customary commercial practice

12   or obtain a waiver pursuant to FAR 12.302(c).  So, the GAO in

13   this case was giving the agency the opportunity to do exactly

14   what CGI is saying the agency can't do.

15            MR. MCCALEB:  The obvious and plain distinction, of

16   course, is that here we have the Federal Circuit having

17   affirmed this Court's determination that the terms are not

18   consistent with customary commercial practice.

19            MR. RAYEL:  But not based on any market research

20   that the agency was required to do under the FAR.

21            MR. MCCALEB:  Frankly, it doesn't matter --

22            MR. RAYEL:  That's why this is -- that's why this

23   is a new issue.  This is not the identical issue that CGI put

24   at issue in this case.  It would be a new issue and I say

25   would be because we're not there.  But the agency has made no

 1    such determination that these terms are consistent with

 2    customary commercial practice.  We have no intention of

 3    arguing in this litigation that these terms are consistent

 4    with customary commercial practice.

 5              THE COURT:  Okay.

 6              MR. RAYEL:  Only -- I'm sorry, Your Honor.

 7              THE COURT:  No, no, no, no, no, I -- go ahead and

 8    finish Mr. Rayel, I apologize.

 9              MR. RAYEL:  This would only come up if the agency

10    did the market research.  The market research showed, in the

11    agency's view, that these terms were consistent with

12    customary commercial practice.  The agency made a finding

13    that they were consistent with customary commercial practice

14    and then included the terms in either a new RFQ or in an

15    amended RFQ or kept it the same if that was permissible by

16    law.  And I understand CGI's argument that it's not.

17              But that's -- that's when it would come up in a

18    protest then that CGI or another bidder would file to argue

19    that the terms are, in fact, inconsistent with customary

20    commercial practice and CMS's market research was either

21    inadequate or it didn't actually show what CMS is claiming it

22    showed.  But that's a totally different issue than what's

23    been litigated in this case.

24              MR. MCCALEB:  Your Honor --

25              THE COURT:  That's exactly right.  So, that's my

CGI Federal, Inc. v. USA                                    5/1/2015

1    problem.

2           MR. MCCALEB:  Yeah, and, Your Honor, just to close

3    the loop on this and then I'll be quiet.  The issue before

4    the Court is whether those payment terms that required RACs

5    to wait three to ten times longer were consistent with the

6    customary commercial practice, you decided they were not, the

7    Federal Circuit affirmed that is what they're trying to now

8    go and examine all over, and that is the same issue.  So,

9    I'll be quiet now, I'm sorry, Your Honor.

10          MR. RAYEL:  And just to try to close the loop as

11   well, the agency has never examined that issue before.  It's

12   an agency determination and that's what ultimately -- that's

13   what the agency ultimately needs to do under the FAR, is

14   required to do.

15          THE COURT:  All right.  Well, a couple of thoughts

16   here.  You know, everyone probably recognizes that in

17   government contract law, the Government doesn't have to issue

18   a new RFQ.

19          MR. RAYEL:  Right.

20          THE COURT:  It doesn't have to.  It doesn't have to

21   amend the RFQ immediately.  There's no -- in fact, under the

22   terms of the injunction that the Plaintiff has provided, the

23   Defendant would provide all prospective offerors a reasonable

24   opportunity to submit an offer under any new or amended RFQ.

25   Any.

1          MR. RAYEL:  And that's why we used the word "any"
2    there because it may be that they just decide they're not
3    going to do anything.  Maybe they're not going to procure the
4    services.  Maybe they're going to continue to extend the
5    existing contracts.
6          THE COURT:  The Government has complete discretion
7    in that scenario, if they did nothing, to go forward and do
8    your market research and have it apply to the next case,
9    right, Mr. Rayel?
10          MR. RAYEL:  Yes, Your Honor.
11          THE COURT:  So, what's wrong with that?
12          MR. RAYEL:  My under -- and maybe I'm
13    misunderstanding CGI's arguments or what they think the scope
14    of the injunction is.  But, I mean, it sounds like what
15    they're saying is that you cannot -- I mean, the agency could
16    go forward with new RFQs.  It could also go forward with the
17    current RFQ so long as they comply with Part 12.  That may
18    require an amendment, it may perhaps not.  We don't need to
19    decide that right now.  All the Court needs to do is enjoin
20    the agency from proceeding until it complies with Part 12
21    with respect to the payment terms.
22          THE COURT:  Well, I know that's what you want.
23    That wasn't my question.
24          MR. RAYEL:  Okay.
25          THE COURT:  We have on the table a two-pronged

CGI Federal, Inc. v. USA                                      5/1/2015

```
 1    proposed injunction.  Enjoin the Defendant from placing
 2    orders under the existing RFQs, period.  Number two,
 3    Defendant shall provide all prospective offerors a reasonable
 4    opportunity to respond to any new or amended RFQ.  So, the
 5    existing ones are a no-go because of my decision and the
 6    Circuit's decision.  But you have the flexibility to do
 7    nothing or to revise it after you do your market research.
 8            MR. RAYEL:  Right, Your Honor, the agency has the
 9    flexibility to amend -- to amend the RFQs, potentially to
10    keep the same payment terms and then proceed with the
11    procurement.  They wouldn't necessarily need to go out and
12    obtain new proposals.
13            THE COURT:  Well, you'd have to --
14            MR. RAYEL:  (Inaudible) that.
15            THE COURT:  Well, I'm not going to bless that
16    because that's not my case.
17            MR. RAYEL:  Right.
18            THE COURT:  All I'm saying is the injunction that
19    is on the table, the two paragraphs I have just stated, would
20    permit the agency to go -- going forward, to comply with FAR
21    Part 12 however it deemed appropriate.  But for this case,
22    there would be no orders under those existing RFQs because
23    the trial court and the Federal Circuit found that those
24    existing RFQs are inconsistent with commercial practice and
25    violate FAR Part 12.
```

1           MR. RAYEL:  What I understand their injunction

2    to --

3           THE COURT:  No, it's not theirs.  I'm saying that's

4    what I'm inclined to do.  So, what's wrong with that?

5           MR. RAYEL:  What I understand the proposed

6    injunction to be is that the agency can amend the RFQs, but

7    then needs to go out and provide and basically solicit new

8    offers from anyone who wants -- anyone on the schedule, at

9    least, that wants to -- wants to bid.  And that's not

10   required by the FAR.  If the agency amended the RFQs,

11   particularly if it kept the exact same payment terms, it

12   could simply -- it could simply seek new proposals from the

13   offerors that actually submitted quotes or it could -- it

14   could if the terms don't -- if the amendment doesn't actually

15   change anything that required new proposals, it could

16   potentially simply make the amendment, provide it to all

17   actual offerors and then go forward with an award based on

18   the proposals.

19          MR. MCCALEB:  Your Honor --

20          MR. RAYEL:  Those are possibilities under the law.

21          THE COURT:  Now, Mr. --

22          MR. RAYEL:  And, again, you don't decide what they

23   are or aren't.

24          THE COURT:  Mr. Rayel, why would the agency do

25   that?  Why would they cut out the Plaintiff, who they found

1   to have standing?  That doesn't make any sense.  And I'm not

2   sure the agency in this litigation could do that.

3           MR. RAYEL:  If it had a rational basis for doing

4   it, it could, and I'm not -- and I don't think we need to

5   start getting into what -- you know, I can't defend the

6   rational basis of a decision that hasn't happened.

7           THE COURT:  Oh, well, you're going to -- I'm giving

8   you an opportunity to give me your position as to why that

9   proposed injunction would be illegal or problematic that the

10  Defendant provide all prospective offerors a reasonable

11  opportunity to respond to any new or amended RFQ.  Isn't

12  that --

13          MR. RAYEL:  Because there's nothing in the FAR that

14  requires that and now it -- and the agency may potentially

15  have a rational basis for not doing that, for saying, you

16  know what, we have an RFQ, we're keeping the same payment

17  terms because of a waiver or whatever and, you know, there's

18  no reason to go out and solicit from anybody else.  In fact.

19  CGI is on record as saying we can't bid under these payment

20  terms.  This is commercially impracticable for us.  So, it

21  doesn't make any sense to go out and seek a bid from CGI

22  under these payment terms.

23          THE COURT:  Well, but --

24          MR. RAYEL:  I think it would be -- and the Court

25  doesn't need to decide this today, but I think it would be

CGI Federal, Inc. v. USA                                    5/1/2015

1    perfectly rational for the agency to say, you know what,

2    since we're not actually making a substantive change to our

3    terms, we're going to go forward with the proposals that

4    we've received.

5            MR. MCCALEB:  Your Honor, I think you can see why

6    we have been, as a result of similar conversations, so

7    reticent to agree to their terms.  We just litigated this at

8    three different fora and prevailed.  And, now, what they're

9    saying is we're trying to find everywhere possible to

10   preserve a way to not allow you to know what happened on

11   corrective action and give you an opportunity to respond to

12   what we do on corrective action.

13           Ultimately, what we want to be able to do is know

14   what they did and be able to respond.  It might be through

15   the submission of a quote, it might be doing nothing or it

16   might be submission of a protest especially, you know, if

17   they -- if they now want to go the waiver route.  But we --

18   it is unconscionable to think that now having litigated this

19   case and having been vindicated that the Government is trying

20   to preserve the right to say CGI -- we want to preserve the

21   right not to include CGI and apprise them of what we're doing

22   and give them an opportunity to respond.

23           THE COURT:  Okay, Mr. McCaleb, let me ask you this:

24   How does this injunction strike you?  Enjoin the Defendant --

25   it's basically your injunction with one added phrase.  Enjoin

CGI Federal, Inc. v. USA                                    5/1/2015

1    the Defendant from placing orders against existing RFQs

2    unless it obtains a waiver.  That's the additional phrase.

3              MR. MCCALEB:  Yeah, we would absolutely -- we would

4    not embrace that.  We don't -- and I don't think that the

5    Court should be embracing that this is a situation that we

6    don't see any fact -- any situation under which they can

7    properly waive here.  And I went through and tried to kind of

8    give you a flavor of that.

9              THE COURT:  Yeah, but that issue wasn't litigated.

10   And waiver is compliant with FAR Part 12.

11             MR. MCCALEB:  What I --

12             THE COURT:  Or might be or --

13             MR. MCCALEB:  Well, that's the point.  What we

14   would want to be -- what we would want to know is, A, are

15   they waiving; B, notify us of that fact; and C, allow us an

16   opportunity to respond through protest or otherwise.  But,

17   right now, there's nothing that would ultimately require them

18   to do that.

19             THE COURT:  Well, okay, I could write that in.

20             MR. RAYEL:  Your Honor, this is Mr. Rayel.  We

21   certainly are not arguing that if the agency were to do a

22   waiver or if they were to keep the terms based upon a finding

23   that they are consistent with customary commercial practice

24   after market research, then CGI would not be able to protest

25   that decision.  CGI certainly could protest that decision if

CGI Federal, Inc. v. USA                                    5/1/2015

1    they believed either of those decisions to be irrational.

2              THE COURT:  Okay.

3              MR. RAYEL:  But we -- what we're saying is the

4    injunction should not prevent the agency from making those

5    decisions that are consistent with FAR Part 12.  I mean, what

6    I understood them basically to be saying is no waiver could

7    ever be rational.

8              THE COURT:  Okay.

9              MR. RAYEL:  Well, that's not this case.

10             THE COURT:  Okay.  Mr. Rayel, it is my conclusion

11   that the Federal Circuit decision bars me from allowing you

12   to go back and do market research and say that you comply

13   with FAR Part 12 for purposes of this litigation and this

14   procurement when that is the law of the case.  That's my

15   reaction here.  But I'm trying to find a way -- but I don't

16   think the Federal Circuit in its opinion or that this trial

17   court either addressed the whole notion of waiver because it

18   wasn't there, of the FAR Part 12 waiver, of the agency's

19   capability to do that.

20             And I don't know that there's any prohibition

21   against you doing that in a procurement -- in a corrective

22   action here.  I don't know whether there is or not.

23             MR. MCCALEB:  Your Honor, that's why we crafted

24   that second part of the injunction in a way that we -- that

25   the Court doesn't have to address the propriety of waiver or

1   not.  It just says that the Defendant is going to provide all

2   prospective offerors, including CGI, a reasonable opportunity

3   to respond to any new or amended RFQs, and that's it.  A

4   response.  So, if they are going to -- if they're going to

5   issue a new RFQ or they're going to amend the RFQ and they're

6   going to say, hey, we are -- you know, we think that we are

7   entitled to and we are waiving, then at least we're going to

8   be notified of that and presumably given -- you know, given

9   an opportunity to review the basis of the waiver so we can

10  decide the propriety of it and how we respond.

11          THE COURT:  Okay.  So, Mr. Rayel back to you then,

12  given that understanding of this two-pronged injunction and

13  the Court's sense that we can't -- I can't bless your going

14  back and redoing the compliance, does that -- would that be

15  acceptable?

16          MR. RAYEL:  Your Honor, first, the -- no, the

17  injunction, as written, would require the agency to allow

18  basically anybody on the schedule to submit quotes.

19          THE COURT:  That's right.

20          MR. RAYEL:  We're not agreeing that the agency is

21  required to do that under the law and it should be able to

22  keep its options open.

23          THE COURT:  Well, wait a minute, what's the

24  prejudice to the agency to do that?  Come on.

25          MR. RAYEL:  I mean -- and, again, I --

For The Record, Inc.
(301) 870-8025 - www.ftrinc.net - (800) 921-5555

CGI Federal, Inc. v. USA

1       THE COURT:  You get a lot of quotes.

2       MR. RAYEL:  I don't know what the agency's going to

3  do.  But we -- but it could be that the agency wants to

4  continue -- if it's going to continue with the same payment

5  terms, then it doesn't need to go out and seek new offers

6  when offerors had the opportunity to bid on those payment

7  terms.  If it changes its payment terms, then perhaps that --

8  perhaps it would want to see new offers.  That's what it did

9  the last time.  But, you know, that's an issue that -- I

10  mean, we're getting into a lot of hypotheticals that I don't

11  believe we need to get into.

12       So, no, we don't -- we don't agree with the terms

13  as written.  We're also not acceding to the idea that the

14  agency is precluded from doing market research for purposes

15  of determining what are customary commercial practices in the

16  industry with regard to payment terms.  That's a requirement

17  of the FAR and we're not going to concede that that's -- that

18  that has preclusive effect in this litigation or any future

19  litigation.  If CGI were to challenge that, challenge a

20  determination based on that market research of what a

21  customary commercial practice is, that would be -- that would

22  not be the identical issue that was before this Court and

23  before the Federal Circuit.  That would be a different issue

24  and that issue was not actually litigated before this Court

25  by the Federal Circuit because we didn't contest it.  That's

1    what the case law -- the restatement said.    So, no, we're

2    not agreeing to that.

3              THE COURT:  Okay, I understand.  But here's what

4    I'm going to do, Mr. Rayel.  I'm going to give you an

5    opportunity to flesh this out because I -- and, you, the

6    Government.  I'm going to issue a show cause order to the

7    Government to show cause as to why an injunction -- or as to

8    why the Federal Circuit's conclusion that the revised payment

9    terms were inconsistent with customary commercial practices,

10   why that finding is not the law of the case such that it

11   binds this Court in any injunction it were to fashion.   In

12   particular, why that -- why your proposed injunction, which

13   would allow you to redo the FAR Part 12 compliance analysis

14   and, in effect, result in a new finding inconsistent with

15   this Court and the Federal Circuit's conclusion that the

16   revised payment terms were inconsistent with customary

17   commercial practices, why that is not barred under the law of

18   the case doctrine.

19              And we'll issue an order and we will articulate in

20   probably a little more coherent way hopefully and I'll give

21   you an opportunity to persuade the Court, Mr. Rayel.  But as

22   I sit here right now, I am not buying the fact that given

23   what was litigated before me and the Federal Circuit, the

24   Government has an opportunity to undo a factual finding

25   prospectively.  And why should this Court's injunction allow

CGI Federal, Inc. v. USA                                    5/1/2015

1    that to happen?  Don't we have to honor this precedent and

2    abide by it in the current situation?

3              MR. RAYEL:  We'll be happy to address that in a

4    brief.

5              THE COURT:  All right.  We'll issue the show cause

6    order shortly and give you an opportunity to respond.  And I

7    know the Plaintiff -- I can sense, Mr. McCaleb, from your

8    comments that the costs of this litigation have been

9    prohibitive for you and, of course, I'll allow you to

10   respond, but I'm not going to -- I'll make it optional.

11             MR. MCCALEB:  Thank you, Your Honor.

12             MR. RAYEL:  Your Honor, what date would we respond

13   by?

14             THE COURT:  Well, typically, when I do a show cause

15   order, I give you ten days.

16             MR. RAYEL:  Okay, that's fine.

17             THE COURT:  But, you know, I haven't issued it yet.

18             MR. RAYEL:  That's fine.  Ten days would be -- the

19   11th would be fine with us.

20             THE COURT:  Okay.  Well, I'm not sure it's going to

21   get out today given what else is on our plate, but we'll try.

22             MR. RAYEL:  The 14th would be fine, too, Your

23   Honor.

24             THE COURT:  Okay.  Anything further?

25             MR. MCCALEB:  The only thing I had, Your Honor, is

CGI Federal, Inc. v. USA                                    5/1/2015

1    you had asked me to send you the transcript, which isn't --

2    of the Federal Circuit argument.  It's not actually reduced

3    to a paper transcript.  What we can do, if it would be okay,

4    is give you the minute cites to where in the audios you can

5    find the quote that I gave you.

6           THE COURT:  Okay, yeah, we have the capacity to

7    listen to the argument, and that will be fine.

8           MR. MCCALEB:  Okay, thank you, Your Honor.

9           THE COURT:  Anything further?

10          MR. MCCALEB:  Not for CGI, Your Honor.

11          MR. RAYEL:  No, Your Honor.

12          THE COURT:  Okay, thank you, all.

13          MR. MCCALEB:  Thank you.

14          THE COURT:  Bye-bye.

15          MR. MCCALEB:  All right.

16          (Whereupon, at 12:01 p.m., the hearing was

17   adjourned.)

18

19

20

21

22

23

24

25

CGI Federal, Inc. v. USA                                    5/1/2015

```
 1                    CERTIFICATE OF TRANSCRIBER

 2

 3          I, Elizabeth M. Farrell, court-approved

 4    transcriber, certify that the foregoing is a correct

 5    transcript from the official electronic sound recording of

 6    the proceedings in the above-titled matter.

 7

 8

 9

10    DATE: 5/4/2015                s/ Elizabeth M. Farrell

11                                  ELIZABETH M. FARRELL, CERT

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```